Hear ye, hear ye, this Honorable Appellate Court for the Second Judicial District is now back in session. Honorable Susan F. Hutchinson presiding. Please be seated, everyone. Your Honor, the second case on the docket is 42-22-0289. The state of Illinois plaintiff, Khalid, the Armani v. Moore defendant. Arguing on behalf of the attorney, Mr. Elliott Corkoff. Arguing on behalf of the appellee, Mr. Ivan O. Taylor, Jr. All right, we do have a motion, I believe, by the state to supplement, and we will, and there is an objection to that, but we will allow the record to be supplemented, and we will consider things as we go forward. All right, Mr. Borchert, are you prepared? Ready. Good morning, Your Honors. Good morning. May it please the Court. Counsel. My name is Elliott Borchert. I'm from the Office of the State Appellate Defender, and I represent the defendant, Appellant Armani Moore, in this matter. Today, I plan on speaking about Issue 1 and standing on my brief for Issue 2. The state's case at trial relied entirely on three sets of out-of-court statements made by the complaining witness, Alexis May, none of which in an ordinary case would have been admissible, but were admissible in this case pursuant to Section 10.2a, rather, because we're dealing with a case of domestic violence here. However, pursuant to this Court's precedent, in order for those statements to be admitted, they have to satisfy the demands of Crawford. And two sets of statements, Alexis's statements to Deputy Rolskies, who is the responding officer, and in her written statement did not do so. So those two statements were not only inadmissible under Section 10.2a, but they are also inadmissible under the Confrontation Clause. And the reason why they are inadmissible under the Confrontation Clause and under Crawford is because Ms. May was not present at trial for cross-examination to explain or defend the statements. Pursuant to Burnett, she did not answer any questions about the offense that occurred whatsoever. She consistently and repeatedly testified, I don't recall, every single time she was asked a question about what happened. Well, she did say, you know, she talked about her recollection of when she got home that she lived with the defendant, correct? Correct. She got it to that point. She also referred to, and she used the term, he moved out, I forget the exact, I have the transcript here somewhere, but he moved out after the incident. That's a direct reference to the incident. So I don't. How is that? I'm sorry. No, go ahead. I was going to say, I don't know that we could sit here and definitively say that was a result of, you know, a domestic battery here. I mean, there was other stuff that happened here, according to Ms. May's statements. There was, you know, I think she testified that Mr. Moore pushed her shoe bin over, that, you know, he took her phone, her keys, and so on and so forth, and also that there was mutual pushing going on. So it could have been a result of that as well. Okay. But the fact remains that she's testifying about something that relates to the incident, putting it into the perspective of this incident, and any insulting or provoking contact that may have occurred. So I think, Your Honor, at the end of the day, that would fall into the preliminary questions section of Burnett. Burnett says in order for the person to be available for cross-examination, the witness has to testify and explain preliminary questions and questions about the offense itself. She acknowledged her signature on the written statement? I think she testified that it looked like her signature. She did not remember writing the written statement. She also did not recognize her handwriting in the statement as well. But she recalled specifically going and recanting? She did. She did recall going to the police department a few months later. Because a lot of people were talking, were in her ear, she said. She used the term, people were in her ear about recanting. Correct. And she also had mentioned that, excuse me, she had some memory issues as well. She mentioned undergoing some surgery. The anesthetic she may have gotten may have affected her memory as well. I hear what Your Honor is saying. I know there was some things in the record about perhaps the defense counsel before. Actually, when she testified then, she said it was the state's attorney's office. She called the state's attorney's office. And they said, if you want to recant, you have to go to the police department. Or worse to that effect. Correct. But that was never really discovered as to who that individual might have been. Correct. That's correct, Your Honor. And she also identified the photographs that were taken of her shoulder with the injury. So she recognized the photos of her body. She, I mean, the state I think was at that point attempted to lay some foundation for the photos and they had to come back to it later with the deputy who testified later to be able to complete that foundation. But at the end of the day, you know, she was kind of wishy-washy on whether that's what her body looked like on the date of the incident, the date the photos were taken. I think she said something along the lines of, you know, if that's what it looked like on that day, then so be it. That's not a direct quote, but it was basically along those lines. All right. Go ahead. Thank you, Your Honor. So another thing I think it's important to look at here is to go back and take a look at what Crawford specifically says. And it says that the purpose of the confrontation clause specifically is to prevent the ex parte examinations admitted at trial against the accused. And that's precisely what we have here. Obviously, at the time Deputy Rolske questioned Ms. May and at the time that she wrote her written statement, Mr. Moore wasn't there to cross-examine her. And, of course, at trial she's testifying consistently, I don't recall, I don't recall, even when defense counsel tried to elicit some testimony about what happened in the first place. So did you have a question, Your Honor? You can complete that thought now. I'm sorry. Go ahead. Yes. So what we have here are these ex parte statements being used against the accused. There's no opportunity to cross-examine regarding them because she simply did not recall the statements. How about the statements to her mother over the telephone where she describes what had taken place and the defendant's actions? Yes. She pretty much laid out what happened to her mother. Isn't that an excited utterance? So she told her mom that he put his hands on me. I don't think that would qualify as an excited utterance because the excited utterance requires that the statement be spontaneous. And that's not something that we have here. The period of excitement is not necessarily a time clock. Right. And it was clear from the evidence that she was still upset, crying when she spoke to her mother, even after her mother picked her up to go back to the apartment. But pursuant to this court's holding in Bush, it was looking at excited utterance and specifically talking about spontaneity and whether the statements in Bush were spontaneous. And this court stated that if there's an intervening conversation between the statement and the event, then the statement is not a spontaneous statement. The statement has to be made to the first person encountered. And here the first person encountered is the gas station clerk. Well, but she asked if she could use her phone. I mean, it didn't relate to the incident. The woman, our victim here is without her phone. We find it later in the couch. This whole thing has started over a phone and a phone charger, allegedly. She might have been crying, but this woman gave her the phone and actually took her to her mother's house. I mean, what statement did she make to her? So at the end of the day, I don't think we know that because this particular person from the gas station didn't testify. So ultimately, I unfortunately don't know the answer to that question, Your Honor. But I do think by the very fact that there was a conversation, that destroys the spontaneity. So not only does it make it not an excited utterance, but considering the factors in Bueno for whether there are circumstances that lead to these statements being admitted under 10.2a of trustworthiness, one of the specific factors there is whether the statement was made spontaneously to a close acquaintance shortly after the crime occurred. So again, we don't have any spontaneity here simply because of that conversation with the gas station. So it was made to a close acquaintance, her mother, shortly after the crime occurred. Correct. The statement was made to her mother. That would consider that evidence. And the admissibility, our review is subject to abusive discretion standard, correct? So typically, when it comes to the admission of evidence, yes, it's abusive discretion. However, these issues were not preserved.  And under those circumstances, review is de novo. Your Honors, I'd also like to talk about this morning, the lack of notice that the state sent to the defense about these specific statements that they're going to use. The specific statute at issue here is 10.2a, subsection b, specifically requires the state to spell out exactly what statements the state is going to use at trial and to basically give that to the defense ahead of trial, so that way the defense can prepare for trial and we can have a fair trial. What's the purpose of discovery, counsel? So purpose of discovery, of course, is to tender over evidence. But at the end of the day here, I think the statute requires more than tendering discovery. It requires, excuse me, the state to specifically spell out what these statements are to the defense. That way we can have a fair trial. And even if it's turned over at discovery, it doesn't necessarily mean it's going to be used at trial. I can tell you from my practice as a trial attorney, you know, I got a lot of discovery all the time and not everything was used. Well, isn't the purpose, discovery allows you to prepare. And if they say everything that we're tendering to you is we intend to use in this proceedings, it causes you to overprepare. But it doesn't cause you to underprepare, does it? They're telling you everything that we've tendered, we will use, and the statement was tendered. So the state did give a blanket discovery disclosure in a boilerplate form that says we'll use any and all of these statements. But that's a boilerplate form. I don't know if we could take a boilerplate form and necessarily glean intent to use these statements from that. Excuse me. Additionally, with regards to this boilerplate form, there was one that was tendered, I believe, on October 7th of 2021, but the body camera footage was not tendered until later after that point. A few months later, I don't recall the exact date. So there couldn't even be confusion there. Hey, are we only going to admit these statements in the discovery that we just got today? Or are we going to use the statements that we got from this body cam video later? And when the state did tender that body cam footage, it did not have one of those specific disclosures on there that it was going to use those statements or potentially use those statements. Well, you seem to, throughout these proceedings and throughout the briefs, seem to think that this should have been done in this issue of the statement should have been done in maybe a motion in limine, because then there would have been more opportunity to talk about it, to consider it, to have findings made. Is there any requirement that a motion in limine must be heard on issues like this? So in looking through the case law, I've been prepping the brief, Your Honor. There really wasn't a whole lot of case law that discussed this statute specifically. What I did notice, however, is that there were motions in limine filed ahead of time before these statements came in. At the end of the day, I don't think a court has ever held that vote that that motion has to be filed, but I think that's just the way that it's been done to give the defense notice ahead of time. So what should this statement have said concerning the body cam or her written statement or her mother's statement? So, firstly, I believe the statement should have said, hey, we're the state. We're going to be using these statements, and here's what these specific statements are, word for word, and here's where you could find them. That might be a little cumbersome for body cam footage, so, I mean, even putting a time stamp on the statements that could be used, I think, would be sufficient. But they had tendered the statements with the boilerplate, especially in the first round of discovery in October, correct? So with the October discovery, the body cam footage? No, I'm not talking about that. I'm talking about the written statement that she made and the statement to her mother. So that I'm not entirely sure on, Your Honor. If I recall correctly, in the disclosure, it tendered, I think it said CDs and then SAO 1 through 60, whatever. So I don't think it specifically stated, hey, written statement is disclosed, if I recall correctly. Your Honor, I also would like to talk about how the court did not make any determinations that it needed to make pursuant to this statute and the factual findings specifically. It's important to remember these statements are hearsay statements, and typically hearsay statements are not admissible in evidence because they're unreliable. When we look at exceptions to hearsay, there's usually something in those exceptions that allows us to say, hey, these statements are reliable. And for this particular exception in Section 10.2a, that's the factual findings. So when we have the court not making the necessary factual findings, what we have are statements that are unreliable coming into evidence like they did here. So, excuse me. One of the things the court has defined is that the statements are more probative on the point for which it is offered than any other evidence that could be obtained or reasonable efforts. It asks us to consider the reasonable efforts that could be to obtain that evidence. Well, there's a presumption that the trial court considers the requirements of the statute, correct? Yes, Your Honor, but I think we have a record here that reflects that presumption because that factor I just mentioned necessarily requires a dialogue between the state and the court about what other evidence there is and what reasonable effort the state could have or did take to obtain that evidence. And also, what other evidence could there have been that was not presented? I'm not sure, Your Honor, at the end of the day. They were alone when this happened. I'm sorry? They were alone when this occurred. Correct. And she made an outcry to her mother. Correct. And that was presented. Correct. And what else? And then the statement to the police officers. Right. What else is there? Unfortunately, I'm not sure, Your Honor. There's photographs. There are photographs, too, but we aren't really privy to what other discovery there was. That's the whole point of that conversation between the state and the court as well. And the court here just simply quickly overruled these objections without making the necessary findings. Again, it's important to keep in mind this comes down to reliability. We have to ensure that these statements are reliable before they come into evidence, because otherwise we'll get to a point where the statements just come in and it's not even necessary for the witness to say anything, and then at that point what's the point of a trial? So you're saying if we rule against your position, we're actually suggesting that there's no point in trials in the future? So, Your Honor, I'm trying to outline the problem here if I may finish responding to your question. The problem here is I think there's a potential for a slippery slope here for these statements to just come in without anything necessarily needing to be found, and at that point there's no point in witnesses testifying at that point if we're just going to rely on out-of-court statements. The purpose of a trial is to put these witnesses on the stand, to have them answer those questions, and have the jury or the judge, depending on the type of trial, determine the credibility of these witnesses. All right, counsel, your time is up, but you will have an opportunity for a reply if you choose. Thank you, Your Honor. Mr. Taylor. You may proceed. Thank you, Your Honors. Good morning. Good morning, counsel. My name is Ivan O. Taylor, Jr. I argue on behalf of the people. This Court should find that the defendant's claim of plain error and ineffective assistance of counsel must fail, as the trial court didn't err when it decided to allow the people to admit the victim's out-of-court statements into evidence. Mr. Taylor, the judge did not necessarily make findings when these things came in. The statute requires findings, or some, as counsel put it, conversation between maybe the court and the State or the court and the defense. Did any of that occur in this case? In this case, there were two objections to this case, but not to all the statements. When the defense counsel made objections, they indicated that the objection was under hearsay, stating that the victim was not unavailable per 10.2A. Obviously, the press was out to respond, and the victim was unavailable as she testified that she did not recall what happened, which is considered unavailable under the statute. That's when the trial court is determined to overrule the objections. In other contexts of evidence, the trial court is not mandated to specify exactly how they came to the determination to allow evidence in. It's presumed the trial court knows the law and follows it. That's true, but what about I find it reliable? That would have solved one of the problems possibly in this case, correct? That is possible. That is correct. However, there's no indication in this case that to rebut the trial court's presumption that it knew that the evidence that the people wanted to admit would be properly admitted. All right. What about the statement to, I guess it's Rhonda May. I mean, is that, counsel says that's not an excited utterance or couldn't be considered because it's not spontaneous. What's your position there? On that argument, the people say that it could be considered an excited utterance. As the court stated, there's no time frame for what's considered an excited utterance, and just because the victim here, Ms. May, had to ask the clerk to use her phone or to call her mother to make the statement to her, that doesn't prevent the spontaneity. The statement that Ms. May, she only asked the clerk just to use the phone. It was then that she was able to call her mother, and that's when the statement comes in, that the defendant had put his hands on her. And when the mother then was able to see her daughter, she saw that she had a red bruise on her shoulder, a bruise that was not there when she saw her daughter the week prior. Transitioning to the confrontation clause, obviously that only refers to the written statement and the recorded statement made to both W. Tongate and Rolskis. Ms. May, even though she was unavailable under 10.28, was still available for purposes of the confrontation clause. She was on the stand. She was able to give answers to preliminary questions. She stated where she was on the day of the incident, which was Saturday, August 7th. She left work. She came home to the apartment that she had shared with her boyfriend at the time, the defendant. And that's anything that she shared with her boyfriend at the time. When presenting with her written statement, she indicated that it looks like her signature and that she might have written it. Although as to what occurred after she returned home, she did say that she didn't no longer recall. But as Justice Burkett stated earlier, she did admit while she testified that she went to recant her prior statement to the police. She also said she broke up with the defendant after, quote, unquote, our incident. You're right. You're right. She did say that as well. These all indicate, under this court's case, Bueno, that is sufficient information to allow, that's information that she presented to indicate that she understood what the event was. And when the defense counsel was questioning her, defense counsel was able to elicit some, able to ask questions about the event, even though she still responded. And that did not prevent the defendant's right under Confrontation Clause. I believe one thing that the defendant argued today was about motives. And as Justice Hutchinson and she said earlier today, the purpose of discovery is to tenor the information that the people wish to use at trial. People indicated they were going to use, they wanted to use the written statement and recorded statement to the defendant. They provide that information to defense counsel for them to review and use that to prepare. That is proper notice. What the defense seems to be arguing is that whenever any evidence wants to come in, there must be some type of motion of limine to argue about it before trial when that is not necessary. There's no indication within the statute or by case law that requires some type of motion of limine to allow 10.2a evidence in as long as notice was given, which was in this case. In this case, the State knew that our victim here was not going to be very cooperative. They had already seen an, she wasn't really candid with the first officer. Then she wanted to recant. And I'm assuming they had some conversation with her before trial, at which point she said, I don't remember. Wouldn't it have been a better practice, though, to further flesh out this, the introduction, pardon me, introduction of the statement or whatever else you wanted to introduce in a motion of limine? Even if it would be better practice to provide more information, the defendant was still provided with the statements that the people wanted to introduce at trial as evidence. So the defendant was provided notice of what the people wanted to provide. It's not necessary for the people to rewrite the entire written statement again and then provide that written statement to make it a successful notice as to the evidence. Counsel, what about the court's findings on the record? Courts are required to make a meaningful assessment of probative versus prejudice. What can we point to in the record that would indicate that? Your Honor, since the defense of the trial never argued that the evidence was overly prejudicial, it also wasn't argued in a briefing here on appeal. But once again, it is presumed that the trial corresponded with all the law and is not required to explicitly specify how it came to the decision that evidence is not so prejudicial as to not be allowed into. One final comment, if you would like to make, is regarding the motion to cite additional authority regarding a 10.1 prior inconsistent statement statute. If the court chooses to, that is another reason to allow these prior statements in. Because obviously at trial, Ms. May was testifying that she no longer recalled which is inconsistent to the statement she made previously about the actual incident in which the defendant had held her down causing bruising on her shoulder. Furthermore, as I previously argued, there's no issue with the confrontation clause as she was still present in order to allow defense counsel to ask questions to her about the incident. And she indicated under 10.1C2A that the written statement was hers, that it looked like her signature. Also, Deputy Tongate testified that he witnessed Ms. May write the written statement and he also signed it right after she did. And as for the recorded statement, Deputy Roskus testified that the recording was on his body camera as a fair, accurate representation of what occurred during that time when he was speaking to Ms. May when he arrived at the scene. What about her argument about the confrontation clause in which on cross-examination she essentially asserted a complete lack of memory and therefore she was unavailable based on that? Case law indicated that when witnesses are Case law indicated that when witnesses provide preliminary information about the incident and still present and can answer defense counsel's questions, even if the answer is I don't recall, that's still considered present for purposes of the confrontation clause. Now, the case that I'm thinking of is Burnett, and the preliminary questions have to be answered. I think you've talked about those. But it also says questions about the offense described in the statement. So what statements did she make on the stand that answered questions about the offense? One statement she made about the event itself, and it came mostly as a result of the event, that she's no longer a partner with the defendant, that she decided to recant a previous statement she made about the event itself. So your argument is that when she goes to recant, she's acknowledging that she didn't make the statement, that she did have a recollection when she made the written statement, but she's recanting it. Yes, Your Honor. Correct. And she did acknowledge or did say we broke up the day after, quote, unquote, our incident. That's right, Your Honor. Correct. Your Honor, do you have any questions regarding the confrontation clause or the- How do you address the appellant's argument that your argument is forfeited? It would be forfeited. That is correct. However, forfeiture is a limitation on the parties, not the court. The reason people brought forth this information is it might be relevant, and since it was applicable to this particular situation, hence the Weems case, which is a domestic battery case in which the court utilized the prior inconsistent statement statute for a basis of allowing the evidence in. Your Honor, do you have any questions regarding sufficiency of the evidence? Justice Kennedy? No. All right. Thank you, Mr. Tabor. I have none either. Thank you very much. Thank you, Your Honor. Mr. People, I ask that you affirm the defendant's conviction as well as find that there's no plain error in effect of the census of counsel. Thank you. All right. I mispronounced your name before. You said it's Borkhart. Yes. It's okay, Your Honor. Everybody does it. Good morning again. I just want to briefly touch on Section 10.1, the prior inconsistent statement piece here. One of the things that is a prerequisite to the statements coming in under that statute is that the witness is subject to cross-examination concerning the statements. Now, in doing some brief research on this since the state's motion was just filed less than a week ago, it appears that courts, when interpreting that phrase, look to the confrontation clause. If it satisfies the confrontation clause, it could come in under 10.1. If it doesn't, it can't come in under 10.1. Your Honor, that issue, I would argue and continue to argue today, is forfeited, especially considering that motion was filed less than a week from today. It causes unfair surprise in me as counsel to have to scramble to look at case law on this issue, and quite frankly, this Court, too, as well, since it doesn't have the benefit of briefing with regards to that issue. Would you agree that even without briefing, we can affirm for any basis supported by the record? We could reach that and discuss that principle even without a brief or a motion? So, yes, this Court can affirm on any basis that's supported by the record. In my response to the state's motion, I did cite to some case law that talks about unfair surprise. I did excise the portion from that quote about, you know, fairness to the Court, as well, to have briefing before it, as well, so I would stand on that argument, as well. With regards to the state's argument about Ms. May being present for cross-examination because she was present and physically answered some questions, the state looked to Bueno on that. However, Bueno looks to United States Supreme Court cases from the 1980s, specifically Owens and Fenster. And then Crawford represented a significant change in the way we look at Confrontation Clause issues, which occurred in 2005. So we have to keep in mind, again, what Crawford said about the Confrontation Clause, and that is to prevent ex parte examinations being used against the accused, which is what happens here. So when that's the exact situation that we have here, given that Crawford is controlling at this point, I think that would trump Bueno and the cases that Bueno relied on. With regards, Your Honor, to Ms. May not answering questions about the offense, I mean, the state takes the position that she did by recanting. However, that's not what Burnett requires. Burnett requires specific questions and answers about the specific offense at trial. The facts of Burnett indicate that the witness, God understand, she didn't recall necessarily what happened on a specific day for a violation of order of protection, but there were events that occurred between, I think, March 1st of whatever year this was to March 10th or about. And she was able to answer questions about what happened on those other dates supporting the conviction for violation of order of protection. That's a stark contrast compared to what we have here, which is I don't know, I don't remember, so on and so forth. So, Your Honor, we would ask that you reverse Mr. Moore's conviction. If this Court finds that the evidence was insufficient to support a conviction, we would ask that the conviction be reversed outright. Otherwise, we ask this Court to remand for a new trial. Thank you. Thank you. Any other questions? All right. Thank you, counsel, for your argument this morning. We will take the matter under advisement. We will issue a decision in due course. And at this point, we will stand in recess to prepare for our next hearing.